IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

TYMISHA JORDAN and REGINA          *
JACKSON,
                                   *
     Plaintiffs,
                                   *
vs.                                      CASE NO. 4:08-CV-131 (CDL)
                                   *
RANDOLPH COUNTY SCHOOLS;
RANDOLPH COUNTY BOARD OF           *
EDUCATION; HENRY COOK, in his
capacity as Chair of the           *
Randolph County Board of
Education; ROBERT JENKINS, in      *
his capacity as Superintendent
of Randolph County School          *
District; and LEE BYRD, in his
capacity as Principal of           *
Randolph Clay High School,
                                   *
     Defendants.
                                   *
_____

O R D E R

     This action stems from the rape of Plaintiff Tymisha Jordan by three male students in the auditorium of Randolph Clay High School. Jordan brings claims against Defendants under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), 42 U.S.C. §§ 1983, 1985, 1986 ("§ 1983," § "1985," and "§ 1986") and Georgia state law.  Jordan's mother, Plaintiff Regina Jackson, brings Georgia law loss of consortium claims against Defendants.  Presently pending before the Court is Defendants' Motion to Dismiss for failure to state a claim (Doc. 17).  For the reasons set forth below, Defendants' motion is denied as to Jordan's Title IX claim, Jordan's equal protection claims and the related §§ 1985 and 1986 claims, and

Jordan's punitive damages claims against the individual Defendants arising out of the equal protection claims.   Defendants' motion is granted as to all other claims.

MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all allegations set forth in Plaintiffs' Complaint and determine whether the allegations state a claim upon which relief may be granted. *Rivell v. Private Health Care Sys., Inc.,* 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (to state a claim, a complaint must contain "enough factual matter (taken as true) to suggest" the required element).   The Rule 12(b)(6) standard "'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell*, 520 F.3d at 1309 (quoting *Twombly*, 550 U.S. at 556).   Although "'[f]actual allegations must be enough to raise a right to relief above the speculative level[,]'" "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable[.]'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

**1.    The Parties**

Plaintiff Tymisha Jordan was a full-time student at Randolph Clay High School ("RCHS") during the time relevant to this action.

(Compl. ¶ 4.)  Plaintiff Regina Jackson is Jordan's mother.  (*Id.* ¶ 5.)  RCHS is part of "Randolph County Schools," which receives federal funds.  (*Id.* ¶¶ 4, 7.)  During the relevant timeframe, Defendant Henry Cook was Chairman of the Randolph County Board of Education (*id.* ¶ 8), Defendant Robert Jenkins was Superintendent of the Randolph County School District (*id.* ¶ 9), and Defendant Lee Byrd was principal of RCHS (*id.* ¶ 10).  Plaintiffs sued Cook "in his capacity as Chair of the Randolph County Board of Education," Jenkins "in his capacity as Superintendent of Randolph County School District," and Byrd "in his capacity as Principal of Randolph Clay High School."  Thus, it appears that Plaintiffs are making official capacity claims against these Defendants, which are treated as claims against the Randolph County Board of Education and the entity that operates schools in Randolph County, Georgia. *Smith v. Allen*, 502 F.3d 1255, 1272-73 (11th Cir. 2007) (official capacity suit is another way of pleading an action against the entity of which an officer is an agent).  Based on the allegations in the Complaint, including the allegations related to joint and several liability, it appears that Plaintiffs are also asserting individual capacity claims against Cook, Jenkins and Byrd because Plaintiffs seek to hold these three Defendants personally liable for any judgment. *See Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575, 1577 (11th Cir. 1994) (noting that the "essence of an individual capacity suit is that the

plaintiff is seeking to recover from the individual defendant, who is personally liable for the judgment").

**2.    The Events Giving Rise to this Action**

In early September of 2006, Jackson told Principal Byrd that three boys—Anthony Davis, DelWayne Price, and Courtney Green—tried to look up Jordan's dress. (Compl. ¶ 26.)  Principal Byrd told Jackson that he could only give the boys in-school suspension because of the incident. (Compl. ¶ 28.)  In a separate incident, Green attempted to sexually assault Bridget Thompson, another female student, by grabbing her and throwing her into the boys' restroom; another person disrupted the incident and caused Green to run away. (*Id.* ¶¶ 29-31.) Thompson's mother reported the incident to Principal Byrd, who said that Green "was a special person and that there was nothing he could do." (*Id.* ¶ 36.)  Thompson's mother also reported the incident to Chairman Cook, who said that nothing could be done. (*Id.* ¶ 37.)

After the final school bell rang on September 27, 2006, Davis, Price and Green took Jordan into an unlocked auditorium and raped her. (*Id.* ¶ 40.)  Jordan then went to the high school office, and a school employee took her home, only informing Jackson that Jordan had missed the school bus. (*Id.* ¶¶ 41-42.)  School officials did not report the rape to Jackson. (*Id.* ¶ 43.)  When she arrived home, Jordan exhibited signs of withdrawal and a desire to take a bath, but she did not tell Jackson about the rape until the next day. (*Id.* ¶¶ 44-47.)  When Jordan reported the rape to Jackson, Jackson

4

immediately reported the rape to the authorities and took Jordan to the hospital for an examination, which revealed abrasions and bruising consistent with rape. (*Id.* ¶¶ 48-49.)  The Georgia Bureau of Investigations ("GBI") conducted a criminal investigation of Davis, Price and Green, and the three admitted that they had sexual intercourse with Jordan in the RCHS auditorium.[1]  (*Id.* ¶¶ 50-52.) Davis, Price and Green were charged with performing a sexual act with force and against the will of another; Davis was declared incompetent to stand trial, and Green and Price accepted a plea agreement and pled guilty to aggravated assault.  (*Id.* ¶¶ 51, 53-54.)

Jordan "was forced to withdraw[]" from RCHS after the rape, and Defendants have not provided her with educational assistance since then, though they mailed her a high school diploma. (Compl. ¶¶ 56, 62-63.)  Defendants did, however, provide educational assistance and support to Davis, Price and Green.  (Compl. ¶ 55.)

## 3.   Plaintiffs' Claims

### A.   Title IX Claim Against Randolph County Schools

Jordan's Title IX claim against Randolph County Schools is based on her contention that Defendants knew or should have known that Davis, Price and Green had a history of sexually harassing and sexually assaulting other students but did not take any corrective

---

[1]Superintendent Jenkins told Jackson that the rape might have happened at home. (Compl. ¶ 57.)  In addition, Principal Byrd told the GBI that there were rumors that Jordan was abused at home, though no one from the school ever reported any suspected abuse to any authorities. (Compl. ¶¶ 58-61.)

measures to prevent further harassment or assaults by these three students.   In addition, Jordan contends that RCHS did not have adequate sexual harassment grievance procedures.  (Compl. ¶¶ 11-24.) Jordan also alleges that school district personnel were deliberately indifferent to the risk of harm posed by Davis, Price and Green and that as a result Jordan was subjected to severe and pervasive sexual harassment which caused Jordan to lose educational opportunities because of her gender.  (Compl. ¶¶ 67-79.)

B.   § 1983 Claims

Jordan also makes § 1983 claims based on Defendants' failure to prevent the sexual harassment by Davis, Price and Green.   Jordan contends that Defendants were deliberately indifferent to Jordan's Fourteenth Amendment rights and Jordan's rights under the Georgia constitution.   (Compl. ¶¶ 80-84; 90-98; 104-114; 120-128.)   The Complaint focuses on Jordan's "liberty rights and interests" secured by the Due Process Clause of the Fourteenth Amendment (*e.g.,* Compl. ¶ 84), but it also alleges that Defendants discriminated against Jordan because of her gender (*id.*).   Though the Complaint does not specifically mention the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Jordan does specifically rely upon the Equal Protection Clause of the Georgia Constitution, Ga. Const. Art. I § I ¶ II.   (*Id.; see also* Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 6 ("Plaintiff Jordan was deprived of her right to be free from [] discrimination on the basis of her

gender . . . .").)   Thus, construing the allegations in the light most favorable to Jordan as the Court must do at this stage in the litigation, the Court concludes that Jordan is asserting both due process and equal protection claims under 42 U.S.C. § 1983 and the Georgia Constitution.   Jordan also alleges that Defendants acted pursuant to a custom or practice of not investigating reports of sexual misconduct by Davis, Price and Green and that Defendants also had a policy or custom of covering up sexual misconduct by the three students.  (Compl. ¶¶ 85-89; 99-103; 115-19; 129-33.)   In addition to the § 1983 claims, Jordan contends that Defendants conspired to deprive Jordan of her civil rights because of her gender, thus violating 42 U.S.C. § 1985(3) (*id.* ¶¶ 135-37) and that Defendants neglected to prevent a conspiracy to deprive Jordan of her civil rights, thus violating 42 U.S.C. § 1986 (*id.* ¶¶ 136-37).

        C.   State Law Claims

    In addition to their federal law claims, Plaintiffs contend that Defendants should be held liable under negligence and negligence per se theories.  (Compl. ¶¶ 138-41.)  Jackson also makes claims for loss of consortium, contending that Defendants' actions damaged the relationships between Jackson and Jordan and between Jackson and her husband.  (*Id.* ¶¶ 142-45.)

DISCUSSION

## I.  Claims Against "Randolph County Board of Education"

Defendants contend that Plaintiffs failed to allege viable claims against the Randolph County Board of Education.  It is well established under Georgia law that "a county board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued." *Cook v. Colquitt County Bd. of Educ.*, 261 Ga. 841, 841, 412 S.E.2d 828, 828 (1992). The one exception "is where the legislature creates a school board by an act which gives that board the capacity to sue or be sued." *Id.* Plaintiffs do not allege that the exception applies here; they simply argue that the rule does not apply in this action because they are suing the Randolph County Board of Education under federal law. Plaintiffs cite no authority (and the Court can find none) in support of their argument that a Georgia county board of education becomes a body corporate capable of being sued because an action against it is brought pursuant to federal law.  For these reasons, the Court grants Defendants' Motion to Dismiss as to "Randolph County Board of Education" and Chairman Cook in his official capacity.

## II.  Claims Against the Randolph County School District

Defendants contend that Plaintiffs' claims against the Randolph County School District fail because Plaintiffs named "Randolph County Schools" as a Defendant and there is no allegation that "Randolph

8

County Schools" is a legal entity that exists and is capable of being sued. As the Georgia Supreme Court noted in *Cook*, a school district is a body corporate with capacity to sue and be sued. *Cook*, 261 Ga. at 841, 412 S.E.2d at 828. Here, it is clear that Plaintiffs seek to bring suit against the entity that operates schools in Randolph County, Georgia: Plaintiffs specifically named "Randolph County Schools" and "Randolph County School District" in the Complaint, and Plaintiffs make official capacity claims against Superintendent Jenkins and Principal Byrd—both of whom are employees of the entity that operates schools in Randolph County. Whether the proper name of the entity Plaintiffs seek to sue is "Randolph County Schools," "Randolph County School District," "Randolph County School System" or some variation of those names, the Court declines to dismiss Plaintiffs' Complaint at the pre-Answer Motion to Dismiss stage simply because Plaintiffs may or may not have correctly named the entity that operates RCHS. Furthermore, by making official capacity claims against Superintendent Jenkins and Principal Byrd, Plaintiffs make claims against the entity that employs them—which is the entity that manages schools in Randolph County, Georgia. Thus, the Court concludes that Plaintiffs' references to "Randolph County Schools" are not fatal and that Plaintiffs should be given an opportunity to discover the correct legal name of the entity that operates schools in Randolph County and employs Superintendent Jenkins and Principal Byrd, and then amend the Complaint if necessary.

### III. Title IX Claim Against Randolph County Schools

Defendants' sole argument for dismissal of Jordan's Title IX claim is that Jordan did not include in the Complaint the correct legal name of the entity that operates RCHS.  As discussed above, the Court rejects this argument.  Because Defendants make no arguments regarding the merits of Jordan's Title IX claim and the Court declines to make arguments for the parties, the Court denies Defendants' Motion to Dismiss Jordan's Title IX claim.

### IV.  § 1983 And Related Claims

#### A.   Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend XIV.  To make out a claim under § 1983, Jordan must show that Defendants, acting under color of state law, deprived Jordan of a right, privilege, or immunity secured by the Constitution or a federal law.  42 U.S.C. § 1983.  Thus, to succeed on a § 1983 claim based on a violation of the Due Process Clause, Jordan must establish that a state actor acting under color of state law deprived Jordan of rights secured by the Due Process Clause of the Fourteenth Amendment.  Furthermore, "to prevail on a § 1983 claim against a local government entity, a plaintiff must prove both that her harm was caused by a constitutional violation and that the government entity is responsible for that violation." *Wyke v. Polk County Sch. Bd.*, 129 F.3d 560, 568 (11th Cir. 1997).

10

Jordan contends that Defendants deprived Jordan of her liberty interest in freedom from unjustified intrusions on personal security by failing to provide her with adequate protection against Davis, Price and Green.  Jordan argues that Cook, Byrd and Jenkins—who are state actors—knew of a need to supervise Davis, Price and Green but made a "deliberate indifference choice" not to take any action.  At the core of Jordan's argument is the assertion that Randolph County school administrators had a constitutional duty based on the Due Process Clause to protect Jordan from sexual harassment at the hands of private actors.  In support of this theory, Jordan cites *Gold v. City of Miami*, 151 F.3d 1346, 1350-51 (11th Cir. 1998), contending that § 1983 liability exists when a municipality knows of a need to "supervise in a particular area" and makes "a deliberate choice not to take any action."[2]  In *Gold*, however, the issue was whether a municipality could be held liable under § 1983 for failure to train or supervise its own employees—police officers who were state actors—who allegedly violated the plaintiff's Fourteenth Amendment rights.  Here, the issue is whether a county school district can be held liable under a due process theory for failure to supervise its students.  Defendants could only be liable on Jordan's § 1983/Due

---

[2]The Eleventh Circuit cited *Gold* in a Title IX case to explain the concept of deliberate indifference.  *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1295 (11th Cir. 2007).  *Williams* involved the question whether Title IX liability existed based on university officials' failure to supervise a basketball player they had recruited despite knowledge of his history of sexual misconduct.  There was not, however, any substantive due process claim based on the failure to supervise the basketball player.

Process claim if they owed some duty to protect Jordan from third-party assaults. *Worthington v. Elmore County Bd. of Educ.*, 160 F. App'x 877, 881 (11th Cir. 2005) (per curiam).

The Due Process Clause "was intended to prevent government from abusing [its] power, or employing it as an instrument of oppression[.]" *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (first alteration in original) (internal quotation marks omitted). The "substantive component" of the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal quotation marks omitted). The Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* Thus, the Supreme Court has recognized that the Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual." *Id.* at 196. Therefore, "a State's

failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.[3]

Under limited circumstances, the Due Process Clause does impose "upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198.  These circumstances exist when the State has a "special relationship" with an individual based on incarceration, institutionalization or "other similar restraint of personal liberty." *Id.* at 200.  In these circumstances, the "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.*  The Eleventh Circuit has held that "[c]ompulsory school attendance laws alone are not a 'restraint of personal liberty' sufficient to give rise to an affirmative duty of protection." *Wyke*, 129 F.3d at 569 ("By mandating school attendance, the state simply does not restrict a student's liberty in the same sense that it does when it incarcerates prisoners or when it commits mental patients involuntarily.").

---

[3]In *DeShaney*, the plaintiff argued that the State deprived a child of his liberty interests by failing to protect him from his father's violence, which resulted in severe and permanent injuries to the child. Officials of the county Department of Social Services strongly suspected the father of child abuse, entered into an agreement with the father meant to provide protective measures for the child, and monitored the child over a period of more than six months but did nothing despite continued suspicions of child abuse and knowledge that the father had not complied with several aspects of the agreement. *DeShaney*, 489 U.S. at 192-93. Nonetheless, the Supreme Court concluded that no substantive due process claim existed because the State did not create the dangers faced by the child or make him more vulnerable to them. *Id.* at 201.

In *Wyke*, a public school student tried twice to commit suicide on school grounds.   School officials did not tell the student's mother or guardian about the attempts, and the child later committed suicide at home.  *Wyke*, 129 F.3d at 564-65.  There was evidence of inadequate training and policies on suicide prevention.  *Id.* at 565. However, the Eleventh Circuit found that the school had no constitutional duty to provide for the student's safety because the State had not restrained the student's liberty or made him more vulnerable to harm.[4]  *Id.* at 570.  Similarly, the Eleventh Circuit found no constitutional duty to provide for a student's safety in *Worthington*, where one student was sexually assaulted by another student on the school bus and there was evidence that the assault occurred due to a policy of having inadequate adult supervision on the school bus.  *Worthington*, 160 F. App'x at 880-81.  The rationale: the State did not, in requiring a student to attend a particular school or ride a school bus, restrict the student's liberty in the same sense as it does when it incarcerates prisoners or involuntarily commits mental patients.  *Id.* at 881.  Based on these precedents, the Court concludes no "special relationship" existed in this case giving rise to a duty on the part of Defendants to protect Jordan from third parties.  Thus, even if Defendants acted with deliberate indifference

---

[4]A State makes a person more vulnerable to harm when it places the person in a worse position than the person would have occupied had the State not acted at all—such as when the State prevents a third party from rescuing the person.  *See Wyke*, 129 F.3d at 570.

as Plaintiffs allege, "there was no constitutional violation." *Id.* For these reasons, the Court dismisses Plaintiffs' § 1983 claims predicated on the Due Process Clause as to all Defendants.

Likewise, Jordan's parallel claim under the Due Process Clause of the Georgia Constitution fails.  The Georgia Due Process Clause provides, "No person shall be deprived of life, liberty, or property except by due process of law." Ga. Const. Art. I § 1 ¶ I.  Like the due process clause of the United States Constitution, the Georgia due process clause "control[s] only the actions of states, not those of private individuals." *Reinertsen v. Porter*, 242 Ga. 624, 627, 250 S.E.2d 475, 477 (1978).  As Plaintiffs acknowledge, the Georgia constitution's grant of due process is generally co-extensive with the Fourteenth Amendment of the United States Constitution.  *In re Floyd County Grand Jury Presentments for May Term 1996*, 225 Ga. App. 705, 709, 484 S.E.2d 769, 772 (1997).  Therefore, for the reasons set forth above with regard to Plaintiffs' federal substantive due process claim, Plaintiffs' state due process claim also fails, and each Defendant is entitled to dismissal of Plaintiffs' claim based upon the Due Process Clause of the Georgia Constitution.

B.   Equal Protection Claims

As discussed above, though the Complaint is not a model of clarity, a fair reading of the Complaint reveals allegations that Defendants violated Jordan's constitutional right to be free from sex discrimination, in violation of the Equal Protection Clause of the

United States and Georgia Constitutions.  *See Williams*, 477 F.3d at 1300 (noting that Equal Protection Clause "confers a federal constitutional right to be free from sex discrimination").  In addition, Plaintiffs' brief (which, like the Complaint, is often confusing and unclear) states Plaintiffs' position that Jordan "was deprived of her right to be free from sexually [sic] discrimination on the basis of her gender." (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 6.)  Defendants appear to assume that Jordan did not make any equal protection claims and thus make no substantive argument regarding the viability of such claims against either Randolph County Schools or the individual Defendants. The Court declines to rule on this issue without first hearing from the parties.  Therefore, the Court at this time denies Defendants' Motion to Dismiss Jordan's equal protection claims.

   C.   <u>§ 1983 Claims Based on Violation of Title IX</u>

   In addition to her due process and equal protection claims, Jordan also appears to bring § 1983 claims based upon a violation of Title IX.  Jordan may not use § 1983 to assert a Title IX claim against the individual Defendants.  *Williams*, 477 F.3d at 1300 (allowing plaintiff to bring Title IX claims against individual school officials through § 1983 "would permit an end run around Title IX's explicit language limiting liability to funding recipients").  Jordan's § 1983/Title IX claims against the individual Defendants are therefore dismissed.  The Eleventh Circuit has not spoken on the

16

question whether a plaintiff can use § 1983 to assert a Title IX claim against a funding recipient. However, given that the Supreme Court has recognized an implied private right of action in Title IX itself, *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979), it would be entirely duplicative for Jordan to go through § 1983 to bring a Title IX claim.[5] Therefore, the Court dismisses Jordan's § 1983 claims based upon violations of Title IX. As discussed above, Plaintiffs' claims based directly on Title IX survive Defendants' Motion to Dismiss.

D.   42 U.S.C. §§ 1985(3) and 1986 Claims

To state a conspiracy claim under 42 U.S.C. § 1985(3), Plaintiffs must show, among other things, that Defendants engaged in a conspiracy. *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001). Defendants argue that the intracorporate conspiracy doctrine bars Plaintiffs' § 1985(3) claim.

> "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."

---

[5]The Supreme Court did not reach this question in *Fitzgerald v. Barnstable Sch. Comm.*, 129 S. Ct. 788, 797 (2009). In *Fitzgerald*, the Supreme Court focused on the question whether Title IX is the sole means of vindicating a *constitutional* right to be free from gender discrimination perpetrated by educational institutions. The Supreme Court concluded that Title IX does not preclude § 1983 suits based on the Equal Protection Clause.

*Id.* (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc)).  The intracorporate conspiracy doctrine applies to local government entities, such as a county school district.  *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 768 (11th Cir. 2000).  Plaintiffs contend that the intracorporate conspiracy doctrine does not apply because they alleged that Defendants' discriminatory practices "were willful and unlawful." (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 6.)

The Eleventh Circuit has suggested—but not explicitly held—that there is an "independent personal stake" exception to the intracorporate conspiracy doctrine.  *Dickerson*, 200 F.3d at 770. Under this exception, agents of the same corporate entity are capable of conspiring in civil rights cases if those agents "act outside the scope of their employment, have an 'independent personal stake' in the corporate action, or engage in a series of discriminatory acts as opposed to a single action."  *Id.*  Here, Plaintiffs allege that Defendants failed to promulgate adequate sexual harassment grievance procedures, that they failed to supervise Davis, Price and Green despite knowing that these students posed a risk to female students, that they failed to investigate reports of sexual misconduct by students, and that they covered up incidents of sexual misconduct by Davis, Green and Price.  Though most of these allegations relate to Defendants' official duties of promulgating policies and supervising students, allegations regarding the cover-up do not.  Those

allegations suggest that Defendants acted based on interests of self preservation when confronted with reports of a sexual assault at school on their watch.  Therefore, the Court declines at this time to dismiss the § 1985(3) claim.[6]   Turning to the § 1986 claim, Defendants' argument for dismissal of the § 1986 claim is based upon their contention that Jordan has no valid § 1985(3) claim.  Because the Court finds that dismissal of the § 1985(3) claim is not appropriate at this time, it also declines to dismiss the § 1986 claim.

   E.   Punitive Damages Claims

   Jordan seeks punitive damages in connection with her § 1983 claims.  Jordan may not recover punitive damages from Randolph County Schools, *Healy v. Town of Pembroke Park*, 831 F.2d 989, 991 (11th Cir. 1987), so the Court dismisses Jordan's punitive damages claims against Randolph County Schools.  Regarding the punitive damages claims against the individual Defendants, Defendants' sole argument in favor of dismissal is that Jordan failed to state a § 1983 claim.  Because the Court finds that dismissal of Jordan's § 1983/equal protection claim is not appropriate at present, it also declines to dismiss the related punitive damages claims at this time.

---

   [6]Of course, if Jordan's equal protection claims are not viable, then the § 1985(3) claim—which requires that Jordan show that she was deprived of a right or privilege—would also fail.

## V.   State Law Claims

In addition to their federal law claims, Plaintiffs bring claims under Georgia law against Randolph County Schools and the individual Defendants for negligence and loss of consortium.  Defendants assert that they are entitled to immunity on these claims.

Randolph County Schools is entitled to dismissal of Plaintiffs' state law claims because it is entitled to sovereign immunity.  The doctrine of sovereign immunity protects governments, including county school districts, from suit unless they have waived their immunity. *E.g., Coffee County Sch. Dist. v. Snipes*, 216 Ga. App. 293, 294, 454 S.E.2d 149, 150 (1995).  Waiver requires a legislative act "specifically providing that the sovereign immunity of the school district is waived and the extent of such waiver[.]" *Id.* at 296, 454 S.E.2d at 151.  Plaintiffs have not alleged any facts sufficient to show a waiver of immunity by Randolph County Schools, and Randolph County Schools is therefore entitled to dismissal of Plaintiffs' state law claims.

Turning to Plaintiffs' state law claims for negligence and loss of consortium against the individual Defendants, a suit against a governmental employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a wilful or wanton manner; with actual malice; or with the actual intent to cause injury." *Brown v.*

*Penland Const. Co.*, 281 Ga. 625, 625-26, 641 S.E.2d 522, 523 (2007). Plaintiffs characterize Defendants' actions at issue here as "ministerial" and argue that they need only allege that Defendants' acted with negligence.   The question whether an action is discretionary or ministerial depends on the specific act or omission alleged.   *Dollar v. Grammens*, 294 Ga. App. 888, 890, 670 S.E.2d 555, 557 (2008).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*Murphy v. Bajjani*, 282 Ga. 197, 199, 647 S.E.2d 54, 57 (2007) (internal quotation marks omitted).   A statutorily mandated action is not necessarily a ministerial act; if the mandate requires exercise of personal deliberation and judgment, then it calls for discretionary rather than ministerial action.   *Id.* at 199-200, 647 S.E.2d at 57-58.   Here, Plaintiffs seek to hold the individual Defendants liable for their acts and omissions related to student supervision and designing and implementing a sexual harassment grievance procedure.   These actions call for personal deliberation and judgment, so the factual allegations establish that Plaintiffs seek to hold Defendants liable for a discretionary function.

The next question is whether Plaintiffs sufficiently alleged that Defendants acted in a wilful or wanton manner, with actual

21

malice, or actual intent to cause injury.  "Actual malice" means "a deliberate intention to do wrong, and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others."  *Murphy*, 282 Ga. at 203, 647 S.E.2d at 60.  A "deliberate intention to do wrong" is "the intent to cause the harm suffered by the plaintiffs."  *Id.*  Similarly, "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Kidd v. Coates*, 271 Ga. 33, 33, 518 S.E.2d 124, 125 (1999) (internal quotation marks omitted).  First, Plaintiffs allege that Defendants negligently breached some duty of care owed to Jordan, though they also allege—almost as an afterthought—that if "official immunity is available, Defendants' actions were willful [and] wanton." (Compl. ¶ 141.)  At most, therefore, it appears that Plaintiffs' allegations of malice are "of deliberate acts of wrongdoing done with reckless disregard for the safety of others."  *Murphy*, 282 Ga. at 203; 647 S.E.2d at 60.  This is not sufficient to overcome official immunity. Second, with regard to the loss of consortium claims, even if the allegations were sufficient to state a claim for loss of consortium,[7]

---

[7]Under Georgia law, a loss of consortium claim may be made by one spouse because of a tortious injury to the other spouse, but not by parents based on an injury to a child, so Jackson may not bring a claim for loss of consortium as to the damage to her relationship with Jordan. *E.g., W.J. Bremer Co. v. Graham*, 169 Ga. App. 115, 116, 312 S.E.2d 806, 808 (1983). Jackson's loss of consortium claim based on damage to her marital relationship is also dubious; a spouse's claim for loss of consortium "derives from the right of the other spouse to recover for [his] injuries." *Canberg v. City of Toccoa*, 255 Ga. App. 890, 892, 567 S.E.2d 21, 23 (2002).  Here, however, Jackson contends that the injuries

there is no allegation that Defendants intended to cause the alleged loss of consortium.   Jackson simply alleges that Defendants acted with reckless disregard for Jackson's rights.   For these reasons, the Court finds that the individual Defendants are entitled to official immunity and grants Defendants' Motion to Dismiss Plaintiffs' state law claims against them.

### CONCLUSION

As discussed above, the Court denies Defendants' Motion to Dismiss (Doc. 17) as to Jordan's Title IX claim, Jordan's equal protection claims and the related §§ 1985 and 1986 claims, and Jordan's punitive damages claims against the individual Defendants arising out of the equal protection claims.   Defendants' motion is granted as to all other claims.


IT IS SO ORDERED, this 19th day of May, 2009.


                                     S/Clay D. Land
                                        CLAY D. LAND
                                 UNITED STATES DISTRICT JUDGE

---

to her *daughter*—not her husband—gave rise to the loss of consortium.